AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
AUG 1 5 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One iPhone Cellular Phone
IMEI: 353046098734771

) Case No.
)
) **19MJ3458**
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Manuel Ramirez, Homeland Security Investigations

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S.A. Manuel Ramirez, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/15/19

City and state: San Diego, CA

*Judge's signature*

Hon. Allison H. Goddard, United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>iPhone Cellular phone
>IMEI: 353046098734771
>**(Target Device)**;

The **Target Device** is currently in the possession of the Homeland Security Investigations, 2255 Niels Bohr Ct, San Diego, California 92514.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 4, 2019 to July 4, 2019:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

# AFFIDAVIT IN SUPPORT OF WARRANT

I, Manuel Ramirez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device (**Target Device**): iPhone cellular phone, IMEI #353046098734771, as described in Attachment A (incorporated herein by reference), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960.

2. The **Target Device** was seized from Karla Maria CUEVAS Verdugo ("CUEVAS") incident to her arrest for violation of Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine, at the San Ysidro, California Port of Entry on July 4, 2019. The **Target Device** is currently in the possession of the Homeland Security Investigations, 2255 Niels Bohr Ct, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B (incorporated herein by reference).

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

//
//
//
//

1

## EXPERIENCE AND TRAINING

5. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since January 2008. Prior to employment with HSI, I was a Customs and Border Protection Officer stationed at the San Ysidro Port of Entry. I am currently assigned to the Contraband Smuggling Group 2, San Diego, California. As part of my current duties, I investigate criminal violations relating to drug trafficking, including 21 U.S.C. § 952, Importation of a Controlled Substance. In the course of my duties, I have been the case agent directing drug-related investigations. I have conducted surveillance and participated in the execution of search warrants in drug trafficking investigations. I executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. I have interviewed defendants, witnesses, and informants while conducting drug trafficking investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

6. My training includes attending the Federal Law Enforcement Training Center, where I completed nineteen (19) weeks of HSI Special Agent Training. Through my training and experience, I have gained extensive knowledge in detecting elements of criminal activity as it relates to narcotics/currency smuggling, trade fraud, and money laundering. I have made numerous arrests and have conducted several investigations of such crimes related to, narcotics, money laundering, and customs fraud using a variety of investigative techniques.

7. Based on my training and experience as a HSI Special Agent, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous

2

arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

   f. Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

9. Based on my training and experience, including consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such as cellular telephones to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity. I know that cellular/mobile telephones

3

can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating narcotics conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to import controlled substances from Mexico to the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling-controlled substances from Mexico to the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as, but not limited to, stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject phone; or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

10. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs

and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

11. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

12. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

13. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

## FACTS SUPPORTING PROBABLE CAUSE

14. On July 4, 2019, at approximately 4:47 p.m., CUEVAS entered the United States at the San Ysidro, California Port of Entry in vehicle lane #8. CUEVAS was the driver of a 2009 Ford Focus bearing a Baja California license plate A33NWJ7 (the "Vehicle"). A Customs Canine Enforcement Officer ("CEO") was conducting pre-primary roving operations when he observed his Narcotic and Human Detection Dog ("NHDD") alert to a trained odor near the Vehicle's undercarriage.

15. A Customs and Border Protection Officer ("CBPO") received two negative customs declarations from CUEVAS. CUEVAS stated to the CBPO she was travelling to the Walmart in Chula Vista. CUEVAS stated the Vehicle belonged to her and she had recently purchased it. CUEVAS could not recall she purchased the Vehicle three days prior, but she eventually found the Vehicle's registration indicating she had purchased the Vehicle on July 1, 2019. The CBPO noticed that the Vehicle's floor carpeting was bunched up at the edges and the bolts fastening the front passenger seat had markings indicating they had recently been removed. The CBPO inspected the Vehicle's floor area and discovered a non-factory compartment in the Vehicle's floor. The CBPO examined the density of the non-factory compartment and received a high-density measurement. The CBPO referred CUEVAS and the Vehicle to secondary for further inspection.

16. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the gas tank area and the front passenger floor of the Vehicle.

17. Further inspection of the Vehicle resulted in the discovery of 47 packages weighing 27.16 kilograms (59.87 pounds) concealed within a non-factory compartment in the Vehicle's floor. A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

18. On August 1, 2019, CUEVAS waived Indictment and was charged in a one-count Information with violating Title 21, United States Code, Sections 952 and 960, Importation of Methamphetamine, in the Southern District of California in case number 19-CR-02932-CAB.

6

19. Officers seized the **Target Device** incident to CUEVAS's arrest.[1]

20. As part of my investigation, I reviewed CUEVAS's crossing history and this was CUEVAS's first crossing into the United States in the Vehicle. CUEVAS's last crossing into the United States was as a pedestrian at the San Ysidro Port of Entry on June 24, 2019.

21. Based upon my experience and investigation in this case, I believe that CUEVAS, as well as other persons, were involved in an ongoing conspiracy to import methamphetamine or some other federally controlled substance into the United States. Based on my experience investigating narcotics smugglers, I also believe that CUEVAS may have used the **Target Device** to coordinate with co-conspirators regarding the importation of methamphetamine or some other federally controlled substance into the United States.

22. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of CUEVAS, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos, and other digital information are stored in the memory of the **Target Device**.

23. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in transporting their valuable cargo to its destination within the United States.

---

[1] On July 4, 2019, I manually reviewed the contents of the Target Device pursuant to border search authority and took pictures of information contained on CUEVAS's phone. However, HSI agents were unable to forensically download the Target Device at the time. Nothing from the July 4, 2019 manual review is offered to support probable cause in this application.

I also declare that nothing from the prior search of the Target Device informs my decision to submit this affidavit to obtain a search warrant for the Target Device. I seek this affidavit independent of any information that was seen or reviewed (or not seen) in prior searches.

7

Given this, I request permission to search the Target Device for items listed in Attachment B beginning on April 4, 2019 up to and including July 4, 2019. That date range is based on the fact that, based on my training and experience, CUEVAS likely would have been in communication with co-conspirators to plan and coordinate her smuggle attempt, including acquiring the Vehicle, in the three months leading up to her arrest.

## METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data

contained within the telephone and memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that CUEVAS used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952 and 960.

28. Because the **Target Device** was promptly seized during the investigation of CUEVAS trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by CUEVAS continues to exist on the **Target Device**.

29. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the item described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Manuel Ramirez
HSI Special Agent

Subscribed and sworn to before me this 15th day of August, 2019.

_____
Hon. Allison H. Goddard
United States Magistrate Judge

9